**Nationwide Mut. Fire Ins. Co.**
**v.**
**Casarez**
*[Cite as 2 AOA 143]*

*Case No. 7-88-4*
*Henry County, (3rd)*
*Decided March 5, 1990*

*R.C. 3929.06*

*Messrs. Williams, Jilek & Lafferty, Co., L.P.A., Mr. Robert M. Scott, Attorney at Law, 500 Toledo Legal Building, 416 North Erie Street, Toledo, Ohio 43624-1696, For Appellants.*

*Messrs. Robison, Curphey & O'Connell, Mr. Edwin A. Coy, Ms. Jean Ann S. Sieler, Attorneys at Law, Ninth Floor, Four SeaGate, Toledo, Ohio 43604, For Appellee.*

GUERNSEY, J.

This is an appeal by the defendants, Alfonso Casarez and Linda J. Farison Administratrix of the Estate of kent E. Farison, Deceased, from a summary judgment of the Court of Common Pleas of Henry County in favor of plaintiff Nationwide Mutual Fire Insurance Company entered in a declaratory judgment action filed by the plaintiff against the defendants to establish (1) that plaintiff insurer is not required to further provide a defense to Casarez in an action brought by defendant administratrix against Casarez to recover damages for the death of her decedent by reason of a policy of insurance issued by the insurer to Casarez, and (2) that no liability coverage under that policy is applicable to claims arising from the December 28, 1983, shooting death of the decedent and plaintiff has no duty to pay damages on behalf of or to indemnify Casarez.

The complaint was served on both of the defendants. Following the answer of the administratrix, where she admitted many of the allegations in the complaint, and on May 17, 1987, while Casarez was in default for answer, the insurer filed its motion for summary judgment together with a stipulation of counsel for the insurer and the administratrix acknowledging the truth and accuracy of the insurance policy issued to Casarez, as well as "the facts contained in that portion of the transcript of proceedings, Henry County Criminal Case no. 4330, appended to the Complaint for Declaratory Judgment as Exhibit B." That transcript was a partial transcript of a hearing on a plea bargain where Casarez entered a plea of guilty to involuntary manslaughter in the commission of a misdemeanor, causing the death of Kent Farison in the commission of a conspiracy to commit an assault, in exchange for the State's reduction of the charge from aggravated murder. A copy of the motion for summary judgment was served on Casarez.

On June 16, 1988, counsel for the administratrix filed her memorandum in opposition to plaintiff's motion for summary

judgment and on July 7, 1988, counsel for the insurer filed its reply brief in support of its motion for summary judgment.

A copy of the insurer's filing was served upon Casarez.

On July 22, 1987, while Casarez remained in default for any pleading, the trial judge filed his opinion on the motion for summary judgment, followed on August 12, 1987, by the court's summary judgment, noting that Casarez had neither answered nor otherwise entered an appearance, and specifically holding that "the subject policy of insurance provides no coverage for the injury or death of Kent E. Farison, Jr., deceased, and that Plaintiff has no duty to defend Alfonso Casarez in the case of *Linda J. Farison, Administratrix of the Estate of Kent E. Farison, Deceased,* v. *Alfonso Casarez, et al.,* Henry County Common Pleas Case No. 22494."

In their appeal, filed jointly by the administratrix and Casarez, they assign error of the trial court in granting plaintiff's motion for summary judgment (1) as a genuine issue of material fact exists as to whether the insurance policy provided coverage for the death of Kent E. Farison, Jr., (2) because the court relied on *Preferred Risk Insurance Company* v. *Gill* (1987), 30 Ohio St. 3d 108, which case is clearly distinguishable from the case at bar, and (3) because it would not be contrary to public policy to permit insurance coverage in this instance.

At the outset we would observe that since Casarez neither pleaded nor appeared in the lower court, and at no time did anything in the lower court to have its judgment vacated or set aside, he has no standing to rely upon the errors which are asserted, and fails to affirmatively show error as to himself. For such reasons the lower court's judgment to the extent that it affects his rights must then be affirmed. As happened here, the plaintiff in the tort action was joined as party defendant in *Preferred Risk, supra,* and became the principal appellant in the appeal of that case, having standing, presumably, as a third party beneficiary of the insurance contract.

The following provisions of the Nationwide policy are pertinent as to coverage:

"SECTION II
"PROTECTION AGAINST LIABILITY

Section II of this Homeowners Policy insures those named in the Declarations against loss from damages for negligent personal acts or damage for negligence arising out of the ownership, maintenance or use of real or personal property, subject to the provisions and conditions stated herein and subject to the limit of liability stated in the Declarations for liability.

"PART I – FAMILY LIABILITY AND ITS PROTECTION
" * * *

"IF AN ACCIDENT OR OCCURRENCE SHOULD TAKE PLACE INVOLVING PERSONS COVERED BY SECTION II OF THIS POLICY, NATIONWIDE IS OBLIGATED WITH RESPECT TO:

"A. BODILY INJURY AND PROPERTY DAMAGE
"To pay on behalf of the Insured all sums which he shall become legally obligated to pay (1) as damages because of bodily injury, sickness or disease, and death at any time resulting therefrom, sustained by any person * * *.
*********

"D. SUPPLEMENTARY PAYMENTS
"With respect to such insurance as is afforded by this policy for Bodily Injury and Property Damage liability, Nationwide, in addition to the applicable limits of liability, shall:

"1. Defend with counsel of its choice any suit against an Insured alleging property damage, bodily injury, illness, death and seeking damages therefor. Such suit shall be defended even if groundless, false or fraudulent. But Nationwide may make any investigation, negotiation and settlement of any claim or suit as it deems expedient.

"2. Pay all expenses incurred by the Company and all costs assessed against an Insured in any such suit.

"3. Pay all premiums on appeal bonds in defended suits and on bonds to release attachments. Nationwide had no obligation to apply for or furnish any such bonds.

"4. Pay all interest on the entire judgment accruing after its entry.
*********

"PART II – SECTION II OF THIS POLICY DOES NOT APPLY:
"1. UNDER A (BODILY INJURY AND PROPERTY DAMAGE) AND C (GUESTS MEDICAL EXPENSES) to:
"a. bodily injury, illness, or death or property damage caused intentionally by or at the direction of an Insured, however, this shall not be deemed to exclude liability or an Insured for corporal punishment of pupils * * * ."

Under the first assignment of error we would first consider the duty, if any, to defend the insured in view of its provisions as to supplementary payments and the agreement of the insurer to defend "any suit against an Insured alleging

property damage, bodily injury, illness, death and seeking damages therefor," whether "groundless, false or fraudulent." As to the effect of such provisions see *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177; *Preferred Risk, supra*, 114; and *Wedge Products, Inc.* v. *Hartford Equity Sales* (1987), 31 Ohio St. 3d 65, 67. However, in our view the defendant administratrix is not a beneficiary of the coverage dealing with a duty to defend Casarez and could not have been prejudiced by that part of the lower court's judgment dealing with the duty to defend, and thus has no standing to challenge that part of the judgment. Moreover, Casarez has effectively waived any right which he might otherwise have had to contest the trial court's judgment finding no duty to defend. Accordingly, we find no issue remaining as to that duty which we may properly consider.

As to coverage for Casarez's liability for damages for the death of defendant administratrix's decedent, it is her position that by the provisions of Section II, Part I of the policy, dealing with "family liability and its protection" as to an "accident and occurrence" involving an insured, the policy coverage included "accidents" and that the murder of Farison, Jr., was an accident because it was an expected event devoid of intent or design on the part of Casarez. However, the facts do not support this conclusion. Those facts are condensed in the lower court's opinion, as being shown by the pleadings and stipulations, as follows:

"The facts, construed most favorably for the defendant are as follows: Casarez' wife left him during the summer of 1983. Thereafter, he became involved with a neighbor woman, Leal. Casarez told Leal that his problem with his wife was caused by his business partner, Farison, Sr. She told Casarez it would cost $25,000.00 to hire the hit man. Casarez gave Leal $25,000.00.

"Leal and Casarez first traveled to Detroit, Michigan, where Leal gave $13,000.00 of the funds provided by Casarez to a man she said was from the Mafia. This man absconded with the $13,000.00.

"Leal then arranged for one of her uncles to make the hit. She gave the uncle $6,000.00, but he did not carry out the hit because Farison's girlfriend was with him.

"Leal then arranged for a man from Chicago, known as Watkins, to come to Napoleon to make the hit. Leal told Casarez this man would do anything for her father.

"On December 27, 1983, Leal, Casarez and Watkins met at a White Tower restaurant in Toledo. From White Tower, they traveled to a bar where a gun was purchased by Leal and then to a K-Mart where bullets were purchased by Leal. Casarez did not see the gun or bullets, but saw Leal hand Watkins a paper bag after each purchase.

"Leal, Casarez and Watkins made further plans for the hit. Leal instructed Watkins in the presence of Casarez to *give it to anybody or get anybody* at the Farison's residence in Napoleon, Ohio. (Emphasis added.) Casarez was to drive Watkins to the Farison residence, drop him off and later pick him up after he completed the job. Before Casarez transported Watkins to Farison's, Sr. residence, he, Casarez, called the Farison's, Sr. residence by telephone, got no answer and assumed no one was at home.

"Nevertheless, Casarez dropped Watkins off at the Farison, Sr. home. Farison, Sr. was not there but inside said residence was the decedent, Farison, Jr., and the decedent's son. Watkins shot and killed Farison, Jr. Casarez stated that he forgot to pick up Watkins and later Watkins was apprehended." Notwithstanding that Casarez testified as to intention that Farison, Sr., only be roughed up and of his calling the Farison home to warn Farison, Sr., of Watkins' coming, the facts are clear that Casarez conspired to kill Farison, Sr., provided Leal with the money to employ a "hit man." went with Leal to the White Tower to pick up Watkins, and thence to a bar to buy a gun, and to K-Mart to purchase bullets, and finally delivered Watkins to the Farison home, never demurring at any time from Leal's direction to Watkins made in his presence to "give it to anybody or get anybody" at the Farison home, and never withdrew from the conspiracy or frustrated its purpose.

In our opinion this did not constitute an accidental death in which Casarez was involved but constituted, instead, a "death * * * caused intentionally by or at the direction of an Insured," not within the coverage of the Nationwide policy.

We find no error prejudicial to the appellants as assigned under the first assignment of error.

Under the second assignment of error the appellants argue the inapplicability of *Preferred Risk, supra*, holding that an insurer may bring a declaratory judgment action for purposes of establishing its rights and obligations under a contract of insurance, and, if proceeding in good faith, is entitled to bring such an action "for purposes of adjudicating its duty to defend and/or indemnify its insured in a tort action brought by a third party, even where the underlying tort

complaint alleges conduct within the coverage of the contract of insurance." This decision set aside previous law which did not permit the insurer to challenge the allegations of the complaint as to the underlying tort in a declaratory judgment action for the determination of the existence and scope of the policy coverage. The appellant administratrix rests her argument on the fact that in *Preferred Risk* the insured had been convicted on a plea of guilty to aggravated murder with specifications, an intentional act, whereas here, the defendant was convicted on his plea of guilty to involuntary manslaughter in the commission of a misdemeanor, a crime without an element of intent. Although it might well be impossible to prove a non-intentional tort when the actor has entered a plea of guilty to an intentional crime, the ultimate issue as to insurance coverage in this case is not whether there has been an intentional *crime* committed but whether an intentional *tort* has been committed. In the reality of criminal jurisprudence a negotiated plea of guilty to a crime in which intent is not an element does not preclude the actual existence of conduct constituting the commission of an intentional tort. We note, of course, Justice Douglas's observation in *Preferred Risk*, 112:

"* * * Here, the killing which forms the basis for the underlying complaint resulted in a conviction of the insured *for a crime of which intent is an essential element.* Thus, the intentional nature of the act constituting the basis for the underlying tort action has been established by a court of law. In such a case, it is illogical and unfair to require the insurer to relinquish its statutory right to a preliminary declaratory judgment action and defend the insured regardless of the actual facts."

Although, as we have noted, Nationwide was committed to defend the insured regardless of whether his conduct in bringing about the decedent's death was intentional, is it any the less illogical and unfair to deprive it of the same right held in *Preferred Risk* to be available to insurers to have coverage, or indemnity, determined on the basis of actual facts and conduct rather than to force the insurer to proceed to the defense of its insured merely because of the results of a deal the defendant has made in criminal court? In our opinion the *Preferred Risk* holding, as set forth in the first paragraph of its syllabus, which by its words is equally applicable here, should not deny a declaratory judgment to the insurer when in good faith the insurer claims and shows actual conduct

of the insured precluding coverage merely because the insured has made a negotiated plea in a criminal case encompassing conduct which does not preclude coverage. We so hold and, in view of this holding, find the second assignment of error not well taken.

Under the third and last assignment of error the administratrix argues that notwithstanding the lower court's assertion in its opinion that it would be against public policy to insure against intentional tort, with which assertion the appellant agrees, public policy is not in issue here because Farison's death was accidental and not intended by Casarez.

For the same reasons that exist in our disposition of the second assignment of error in its relation to accidental death, we find this assignment of error not well taken. See also *Wedge Products, Inc.* v. *Hartford Equity Sales Co., supra,* 67, stating that public policy is contrary to insurance of any nature against intentional torts," and holding that there is no duty to defend, even if the policy contains language that it will defend "groundless, false, or fraudulent" suits, where the complaint contains no allegation that states a claim potentially or arguably within the policy coverage.

The third assignment of error is likewise not well taken. Having found no error prejudicial to the appellants in any of the particulars assigned and argued, the judgment must be affirmed.

*Judgment affirmed.*

BRYANT, J., (Presiding) and COLE, J., Concur.

J. THOMAS GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.

RALPH D. COLE, JR., J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.